UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRANSPERFECT TRANSLATIONS
INTERNATIONAL, INC.,

Petitioner,

v.

MILOS MILOSAVLJEVIC and EMISIA GMBH,

Respondents.

No. 25-CV-3834 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Before the Court is Transperfect Translations International, Inc.'s ("Transperfect" or "Petitioner") petition to confirm an arbitration award against Respondents Milos Milosavljevic and Emisia GmbH ("Emisia") under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 21 U.S.T. 2517, codified at 9 U.S.C. § 201 et seq.  Respondents have not appeared and did not oppose the Petition.  For the reasons set forth below, the Petition is granted.

## BACKGROUND[1]

Transperfect is a software development company based in New York.  Dkt. No. 7-3 ("Arb. Panel Final Award") ¶ 3.  Respondent Milosavljevic, a software engineer, was an employee of Transperfect from 2005 to 2015, and he lived and worked in California throughout that period. *Id.* ¶¶ 53.  In 2008, Milosavljevic founded Emisia Consultancy, a Serbia-based software engineering consultancy and the predecessor entity to Emisia.[2] *Id.* ¶ 61.  When Milosavljevic sought to give Emisia

---

[1] The Court draws the following facts from the Petition and the exhibits thereto.

[2] Emisia GmbH, the corporate Respondent, is a successor entity to Emisia Consulting, also owned by Milosavljevic. The initial Transperfect consulting work went to Emisia Consulting.  Eventually, Emisia Consulting was purchased by Respondent Emisia GmbH, an entity that Milosavljevic incorporated in Switzerland in 2018.  Per the Arbitration Panel Final Award, Emisia GmbH was based in Serbia and took on Emisia Consulting's work, even after Emisia GmbH incorporated in Switzerland.  Arb. Panel Final Award ¶ 61.

consulting work on behalf of Transperfect, his Transperfect supervisor informed him that such an agreement would constitute an impermissible conflict of interest. *Id. ¶* 59. In order to obtain permission for the Emisia business, Milosavljevic informed his Transperfect supervisor that he would divest his ownership interest in Emisia, though he never actually did so. *Id.* Transperfect then executed a consulting agreement with Emisia, which Milosavljevic was to oversee remotely. *Id*. ¶¶ 59-60.

In 2015, Milosavljevic decided to return to his home country of Serbia, telling his Transperfect supervisors that doing so would better allow him to manage Emisia's work. *Id. ¶* 62. As part of that move, Milosavljevic concluded his formal employment with Transperfect and began work as a Transperfect contractor. *Id.* To formalize that relationship, the two sides entered into an Independent Contractor Agreement ("Milosavljevic Agreement"). *Id. ¶* 63. Among other provisions, the Milosavljevic Agreement included a clause requiring Milosavljevic to inform Transperfect of any conflicts of interest and "refuse cooperation" in the case of such. *Id. ¶* 68. Apart from his contractor status, the substance of Milosavljevic's work did not change, and he continued to manage Emisia's work and monitor its invoices. *Id. ¶¶* 64–71. From 2015 through 2018, Transperfect paid Emisia $25,198,877. *Id. ¶¶* 81–84.

Only in February 2019 did Milosavljevic disclose his continued ownership interest in Emisia to Transperfect. *Id. ¶* 79. Following that disclosure, Transperfect placed a hold on further payments to Emisia, pending an audit of Emisia's invoices. *Id. ¶* 105. In response, Emisia sued Transperfect in Serbia in July 2019, seeking outstanding payments to Emisia for the period between late 2018 and early 2019. *Id. ¶* 106.

After litigating the Serbian case against it until July 2021—including filing a counterclaim—Transperfect commenced its own arbitration in New York against Emisia on October 28, 2021. Transperfect asserted breach of contract and indemnity claims under Milosavljevic and Emisia's respective consulting agreements, common law fraud and unjust enrichment claims against both Respondents, and a breach of fiduciary duty claim against Milosavljevic. *Id.* ¶ 114. Milosavljevic

and Emisia denied liability.  *Id.*  The arbitration panel reviewed the parties' written submissions and held a hearing, after which it considered further post-hearing submissions.  *See generally id.*

The panel concluded that Transperfect had not met its burden as to any of its common law claims or its indemnification claims, but that it had shown that Respondents breached their agreements with Transperfect.  Specifically, the panel concluded that Milosavljevic had failed to properly supervise Emisia in violation of the Milosavljevic Agreement, disclose his conflict of interest, and verify the accuracy of Emisia's invoices.  *Id.* ¶¶ 117–46.  It further concluded that Emisia had violated its own consulting agreement with Transperfect (the "Emisia Agreement") by breaching the implied duty of good faith and fair dealing by submitting false invoices and failing to verify the accuracy of invoices.  *Id.* ¶¶ 148–153.  The panel awarded Transperfect $11,291,718 in damages against Milosavljevic, and $1,313,895 against Emisia.  *Id.* ¶ 188.  The panel made an additional award of $534,338.96 in arbitration panel fees and $1,313,000 in attorneys' fees, for which Respondents are jointly and severally liable.  *Id.*  Finally, the panel awarded post-award interest at a rate of 6%, beginning on May 24, 2024.  *Id.*

On May 9, 2025, Transperfect filed a petition to confirm the arbitration award.  In accordance with the Hague Convention, Transperfect served Milosavljevic and Emisia with the Petition and the Court's May 12, 2025 Order setting an opposition deadline for Respondents.  *See* Dkt. No. 13 (Emisia service affidavit); Dkt. No. 14 (Milosavljevic service affidavit).  Emisia was served on August 8, 2025, while Milosavljevic was served on October 9, 2025.  Neither Respondent has appeared or filed an opposition to the Petition.

### LEGAL STANDARD

"Because arbitration awards are not self-enforcing, they must be given force and effect by being converted to judicial orders by courts."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d

3

Cir. 2006).[3]  Confirming an arbitration award is generally no more than "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015).

The instant Petition is governed by the FAA and the New York Convention, which applies to "agreements that are commercial and . . . not entirely between citizens of the United States," such as the agreements here. *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 (2d Cir. 2011).  "The FAA and the New York Convention work in tandem, and they have overlapping coverage to the extent that they do not conflict." *Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).  "The [FAA] implements the New York Convention and brings with it a national policy favoring arbitration of claims that parties contract to settle in that manner." *Republic of Ecuador*, 638 F.3d at 391.

Under the New York Convention, any party to the arbitration may apply for a court order confirming an arbitration award, which the court "shall confirm . . . unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award" under the Convention. 9 U.S.C. § 207; *see also* 9 U.S.C. § 9 ("The court must grant such an order unless the award is vacated, modified, or corrected.").  "The burden of proof necessary to avoid confirmation of an arbitration award is very high," and the award should be enforced "as long as there is a barely colorable justification for the outcome reached." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103-04 (2d Cir. 2013).

An unanswered petition to confirm an arbitration award is treated as an unopposed motion for summary judgment. *See D.H. Blair & Co.*, 462 F.3d at 109-10.  Summary judgment is appropriate where the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

**DISCUSSION**

Petitioner argues that it is entitled to confirmation of the arbitration award.  Because there is no material issue of fact in dispute to preclude enforcement of the arbitration award, the Court agrees.

First, Petitioner has presented undisputed evidence that arbitration was appropriate in this case. In relevant part, the Milosavljevic Agreement and Emisia Agreement both provide: "In the event of a dispute, both parties agree to submit it to binding arbitration in New York City by the American Arbitration Association ('AAA')."  Dkt. No. 7-1 (Milosavljevic Agreement) at 5; Dkt. No. 7-2 (Emisia Agreement) at 5.

Second, there is no dispute that the arbitration panel acted within the scope of its authority. While the two relevant agreements do not explicitly give the AAA arbitrators authority to award damages, they are governed by New York law, according to the terms of the agreements.  *Id.*  New York law is clear that a contract providing that "all controversies growing out of it should be arbitrated . . . [implicitly] authorizes the arbitrators to assess damages."  *Publishers' Ass'n of New York City v. New York Stereotypers' Union No. One*, 8 N.Y.2d 414, 418 (1960).  Petitioner has thus presented undisputed evidence, including the agreements and the arbitration award, that the arbitration panel's remedy was appropriate under the terms of the agreements.

Third, Petitioner has submitted evidence demonstrating that Respondents participated in the arbitration proceeding and were given a full and fair opportunity to present arguments and defenses. The parties participated in a preliminary hearing in which they agreed to AAA arbitration and the AAA rules.  Arb. Panel Final Award ¶ 16.  Respondents participated in a four-day arbitration with witness testimony.  *Id.* ¶ 19.  Respondents also had the opportunity to conduct document discovery, *id.* ¶ 25, and submit written briefing, *id.* ¶ 31.  The arbitration panel resolved evidentiary objections, provided Respondents' counsel multiple extensions when counsel experienced medical issues, and ultimately issued a well-reasoned opinion which addressed each of Respondents' legal arguments.  *See generally id.*  In short, there is more than a "barely colorable justification for the outcome reached."  *Kolel Beth*

*Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 103-04.

The evidence submitted by Petitioner thus satisfies its burden of demonstrating entitlement to judgment as a matter of law. *See D.H. Blair*, 462 F.3d at 110. Accordingly, the Court confirms the arbitration award in favor of Petitioner.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to confirm the arbitration award is granted, as is its motion for pre-and post-judgment interest, consistent with the award of the arbitration panel. No later than February 20, 2026, Petitioner shall submit a proposed judgment consistent with this decision. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 5.

Dated:    January 29, 2026
          New York, New York

Ronnie Abrams
United States District Judge